**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

**BARRY LEONARD and**                          CASE NO.:
**ANNIE LEONARD,**

      *Plaintiffs,*

**v.**

**HYUNDAI CAPITAL AMERICA, INC.,**
**TRANS UNION, LLC, EXPERIAN**
**INFORMATION SOLUTIONS, INC. and**
**EQUIFAX INFORMATION SERVICES,**
**LLC,**

      *Defendants,*

_____/

## PLAINTIFFS' COMPLAINT
### JURY DEMAND

1.     Plaintiffs, Barry and Annie Leonard (hereinafter "Plaintiffs") brings this action against Defendants HYUNDAI CAPITAL AMERICA, INC. (hereinafter "Hyundai"), TRANS UNION, LLC ("Trans Union"), EXPERIAN INFORMATION SOLUTIONS, INC. ("Experian") and EQUIFAX INFORMATION SERVICES, LLC ("Equifax") for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et. seq.* (hereinafter "FCRA").

## JURISDICTION AND VENUE

2.     This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States.

3.     Venue here is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in Broward County, Florida.

## PARTIES

4.      Plaintiff Barry Leonard is a natural person who, at all times relevant to this action is and was a resident of Broward County, Florida and is a "consumer" as defined by 15 U.S.C. § 1681a(c).

5.      Plaintiff Annie Leonard is a natural person who, at all times relevant to this action is and was a resident of Broward County, Florida and is a "consumer" as defined by 15 U.S.C. § 1681a(c).

6.      Defendant Hyundai is a California corporation registered to conduct business in the State of Florida with a principal place of business at 3161 Michelson Drive Suite 1900, Irvine, CA 92612.

7.      Hyundai uses instrumentalities of interstate commerce for the purpose of furnishing information on specific trade accounts to the three national consumer reporting agencies, Trans Union, Equifax, and Experian (collectively "credit reporting agencies" or "CRAs").

8.      These instrumentalities of interstate commerce are largely electronic, written, or telephonic communications which has effects on consumers and their credit reports within the State of Florida.

9.      Defendant Trans Union is a limited liability company incorporated under the laws of the State of Delaware, whose members are citizens of the state of Illinois. Trans Union is authorized to do business in and regularly conducts business in the State of Florida and engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

10.    Defendant, Experian is an Ohio corporation incorporated under the laws of the State of Delaware. Experian is authorized to do business in the State of Florida and engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

11.    Defendant, Equifax is a Georgia limited liability company incorporated under the laws of the State of Delaware. Equifax is authorized to do business in the State of Florida and engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

## STATUTORY FRAMEWORK

### THE FCRA

12.    The Fair Credit Reporting Act, 15 U.S.C. §1681 *et. seq.*, was originally enacted in 1970 for the purpose of regulating the collection, dissemination, and use of consumer credit information.

13.    Congress found that "[i]nnacurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system." *See* 15 U.S.C. §1681(a)(1).

14.    "The aim of the Fair Credit Reporting Act is to see that the credit reporting system serves the consumer as well as the industry. The consumer has a right to information which is accurate; he has a right to correct inaccurate or misleading information; he has a right to know when inaccurate information is entered into his file; he has a right to see that the information is kept confidential and is used for the purpose for which it is collected; and he has a right to be free from unwarranted invasions of his personal privacy." The Fair Credit Reporting Act seeks to

secure these rights." Hearings on S. 823 Before the Subcomm. on Financial Institutions of the S. Comm. on Banking and Currency, 91st Cong. 2 (1969).

15.     A "furnisher of information" provides information about consumers' credit history to credit reporting agencies. *See* 15 U.S.C. §1681s-2.

16.     "Furnishers of information" under the FCRA, pursuant to 15 U.S.C. §1681s-2(b) to conduct a reasonable investigation into each of the written disputes that it receives from the credit reporting agencies. *See Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1302 (11th Cir. 2016).

17.     Congress also found that "[c]onsumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers" and that "[t]here is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." *See* 15 U.S.C. § 1681(a)(3),(4).

18.     The FCRA requires credit reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of" consumer reports. 15 U.S.C. § 1681e(b). If a consumer disputes information contained in their credit report, the FCRA requires a credit reporting agency to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller." *See* 15 U.S.C.S. § 1681i(a)(1)(A).

19. In performing the reinvestigation, the FCRA requires a credit reporting agency to "review and consider all relevant information submitted by the consumer in the period described in paragraph (1)(A) with respect to such disputed information." *See* 15 U.S.C.S. § 1681i(a)(4).

20. If the disputed information is inaccurate or incomplete or cannot be verified, the consumer reporting agency "shall…(i) promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and (ii) promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer." *See* 15 U.S.C. § 1681(a)(5)(A)(i),(ii).

21. The FCRA provides a private right of action against any person that violates the provisions of the FCRA. *See* 15 U.S.C. §§ 1681o, 1691n.

22. If the violation is negligent, the FCRA allows the consumer to recover actual damages (§ 1681o(a)); however, if the violation is willful, the consumer may recover any actual damages or statutory damages from not less than $100.00 and not more than $1,000. *See* 15 U.S.C. § 1681n(a).

23. Under the FCRA, the term "consumer report" generally refers to any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for:

    a. credit or insurance to be used primarily for personal, family, or household purposes;

    b. employment purposes; or

    c. any other purpose authorized under section 1681b of this title.

5

*See* 15 U.S.C. § 1681a(d)(1).

24.     The terms "consumer report", "credit report", and "consumer credit report" are used synonymously herein.

*National CRAs and Furnishers Communicate Consumer Disputes and Responses via the E-Oscar Reporting Platform*

25.     The FCRA requires credit reporting agencies to implement an automated reinvestigation system through which furnishers of information to the CRAs may report the results of a reinvestigation that finds incomplete or inaccurate information in a consumer's file. *See* 15 U.S.C. § 1681i(a)(5)(D).

26.     To comply with the automated dispute reinvestigation requirements of the FCRA, Trans Union, Equifax, and Experian along with Innovis Data Solutions, Inc., developed and implemented a browser-based software system that allows the credit reporting agencies to electronically notify furnishers quickly and easily of disputed credit reporting information, and for furnishers to quickly and easily respond to such disputes following the furnisher's investigation of the disputed information.

27.     The system is commonly referred to as e-OSCAR (Online Solution for Complete and Accurate Reporting) and was designed to be Metro 2 compliant. *See* http://www.e-oscar.org/ (last accessed July 1, 2024).

28.     The e-OSCAR system primarily supports Automated Credit Dispute Verification ("ACDV") and Automated Universal Data Form ("AUD") processing, as well as other consumer-dispute-related processes. *Id.*

29.     The credit reporting agencies provide notice of a consumer's dispute to data furnishers in the ACDV format and forward the ACDV to the furnisher through e-OSCAR.

30.     If a furnisher's investigation of a consumer's dispute determines that the information in dispute is incomplete or inaccurate, the FCRA requires the furnisher to correct the information not only with the credit reporting agency that sent the ACDV, but with all other credit reporting agencies to whom the furnisher reported that information. *See* 15 U.S.C. § 1681s-2(b)(1)(D).

31.     The e-OSCAR system facilitates the furnisher's compliance with 15 U.S.C. § 1681s-2(b)(1)(D) by sending a "Carbon Copy" of an ACDV response "to each CRA with whom the [furnisher] has a reporting relationship" in addition to the response to the initiating credit reporting agency. *See* https://www.e-oscar.org/gettingstarted (last accessed July 1, 2024).

32.     Additionally, a furnisher can manually correct a tradeline with a CRA other than the one that initiated a dispute by sending an AUD within e-OSCAR.

33.     Trans Union, Experian, and Equifax each require data furnishers that report to them respectively to register with and use e-OSCAR, and state that e-OSCAR is "in compliance with FCRA and Metro 2 standards." See, https://www.transunion.com/data-reporting/support-teams  (last accessed July 1, 2024).

*Credit Risk Scores aka Credit Scores*

34.     The Fair Isaac Corporation credit risk scoring system, commonly referred to as "FICO", is the leading credit scoring system and utilizes data reported by the credit reporting agencies. *See* https://www.myfico.com/credit-education/credit-scores (last visited July 1, 2024).

35.     The Fair Isaac Corporation uses the data in consumer reports to calculate consumers' credit scores (also known as credit risk scores). *Id.*

36.     The term "credit score" is a numerical value or a categorization derived from a statistical tool or modeling system used by a person who makes or arranges a loan to predict the

likelihood of certain credit behaviors, including default. Consumer Financial Protection Bureau, Supervision and Examination Manual, Version 2(October 2012), p. 99, archived at https://files.consumerfinance.gov/f/201210_cfpb_supervision-and-examination-manual-v2.pdf (last accessed on July 1, 2024).

37.     FICO scores are calculated from five main categories of credit data in a consumer's credit report. Those categories, and their weighted values, are as follows: payment history accounts for 35% of a consumer's FICO score; debt/amounts owed accounts for 30% of a consumer's FICO score; age/length of credit history accounts for 15% of a consumer's FICO score; new credit/recent inquiries accounts for 10% of a consumer's FICO score; and mix of accounts/types of credit accounts for 10% of a consumer's FICO score. *See* https://www.myfico.com/credit-education/whats-in-your-credit-score (last accessed July 1, 2024).

38.     The cost of credit (e.g., interest rates, fees, etc.), the availability of credit, ratings for insurance products, and even unsolicited credit offers, such as the opportunity to refinance a mortgage at a lower interest rate, extended financing periods and lower rate auto loans, and even zero-percent financing credit offers for in-store credit lines, are all, by and large, driven by a consumer's credit score.

39.     Inaccurate or incorrect credit reporting very often results in a lower FICO and other credit scoring model scores, and thus higher costs of credit, diminished opportunity, and less purchasing power for consumers.

40.     There is no established rule or threshold for classifying the significance of a credit score change as minor or major because the impact of a change in score is dependent on the current score. For example, a twenty-five-point change in a credit score that keeps the consumer in a particular credit risk category may not have a large impact on the person's likelihood of receiving

credit. However, a one-point change in credit score that moves the consumer from one risk tier to the next may have a large impact on the consumer's access to credit or the products and rates the consumer is able to secure.

41.     The Fair Isaac Corporation states that inaccurate or incorrect information on a consumer's credit report can hurt their score. *See* https://www.myfico.com/credit-education/questions/fix-errors-on-credit-report   archived at https://perma.cc/9TQN-S5WP (last visited July 1, 2024).

*The CDIA Metro 2 Credit Reporting Standards*

42.     The reporting of consumer credit information, by credit reporting agencies and data furnishers, is the foundation of credit risk scoring and impacts the financial lives of consumers by giving them access to loans and bank products that they need. *See* https://www.cdiaonline.org/for-consumers/credit-reporting-overview/ (last visited July 1, 2024).

43.     Moreover, the significance of credit reporting and the value attached to one's "credit in this day and age is one of his most valuable assets and without it, a substantial portion of the American people would be without their homes, washing machines, refrigerators, automobiles, television sets, and other mechanical paraphernalia that are now regarded as necessities of life." *See Am. Fire & Cas. Co. v. Davis*, 146 So. 2d 615, 619 (Fla. 1st DCA 1962)."

44.     The Consumer Data Industry Association ("CDIA") is an international trade association, representing over 140 members involved in credit reporting, mortgage reporting, check verification, tenant and employment screening, collection services, and fraud verification services, and the CDIA is active in both federal and state legislative affairs, public relations, education, and the promulgation of industry standards.

45.     Because consumer credit reporting information is such sensitive data that has far-reaching implications for most, if not all, consumers, the CDIA works together with CRAs to develop, maintain and enhance industry-standard reporting formats and guidelines.

46.     On May 20, 2015, Ohio Attorney General Mike DeWine and thirty (30) other state attorneys general announced a national settlement ("The Settlement") with the CRAs. Attorney General DeWine Announces Major National Settlement with Credit Reporting Agencies, Ohio Att'y Gen. (May 20, 2015), https://www.ohioattorneygeneral.gov/Media/News-Releases/May-2015/Attorney-General-DeWine-Announces-Major-National-s#:~:text=We%20are%20announcing%20a%20comprehensive,because%20of%20an%20inaccur ate%20credit (last visited July 1, 2024).

47.     The Settlement implemented numerous reporting standards, including the Metro 2, data reporting format. See Assurance of Voluntary Compliance/Assurance of Voluntary Discontinuance, In the Matter of Equifax Info. Servs. L.L.C., Experian Info. Sols., Inc., and TransUnion L.L.C., § IV (E)(2)(May 20, 2015).

48.     To further assist credit reporting agencies and data furnishers with performing their due diligence and reporting accurate, complete, and timely data, in satisfaction of the FCRA's legal requirements, the CDIA offers extensive training, education, and support to credit reporting agencies and data furnishers.

49.     The CDIA's extensive training and support offerings include FCRA certification programs for both credit reporting agencies and data furnishers, to assist each in maintaining compliance with FCRA regulations.

50.     If the standardized methods proscribed by the CDIA are not followed, FCRA certification can be revoked for failure to adhere to such standards.

51.     The Metro 2 Format Task Force is comprised of representatives from Equifax, Experian, Innovis, and Trans Union, and is supported by the CDIA. Metro 2 Format Task Force's mission is to provide a standardized method for the reporting of accurate, complete, and timely data, and has developed the Metro 2 standards. *See* https://www.cdiaonline.org/metro-2/ (last visited July 1, 2024).

52.     To ensure compliance with the FCRA, and in furtherance of its mission, the Metro 2 Format Task Force has developed an industry standard (the "Metro2 standard") for reporting consumer accounts that is "designed to standardize a wide range of credit information while complying with federal laws and regulations for credit reporting." *Id.*

53.     15 U.S.C. § 1681s-2(a)(2) requires furnishers of information to regularly correct and update the information they previously provided to consumer reporting agencies, to make sure the information is complete and accurate. Similarly, upon receiving notice from a consumer reporting agency of a consumer's dispute, 15 U.S.C. § 1681s-2(b)(1) requires furnishers of information to conduct reasonable investigations of a consumer's dispute of the completeness or accuracy of any information provided by the furnisher of information to a consumer reporting agency.

54.     15 U.S.C. § 1681e(b) requires consumer reporting agencies to follow reasonable procedures to assure maximum possible accuracy of information concerning the individual about whom a report relates. Similarly, 15 U.S.C. § 1681i(a)(1) requires consumer reporting agencies to conduct reasonable reinvestigations of a consumer's dispute of the completeness or accuracy of any item of information contained in the consumer's file.

55.     The uniform adoption and implementation of the Metro 2 standards is the primary vehicle by which CRAs and furnishers ensure compliance with their respective duties to maintain complete and accurate information under the FCRA.

56.     The Metro 2 standards provide uniformity in the reporting and interpretation of credit data, including credit risk scoring.

57.     The Metro 2 standards are documented in the Credit Reporting Resource Guide ("CRRG"), an industry-standard publication produced and distributed by the CDIA.

58.     As an integral aspect of its duties under the FCRA, Hyundai is required to have in place adequate and reasonable policies and procedures for handling and investigation of disputed information.

59.     At all times relevant hereto, Hyundai adopted and implemented the Metro 2 format as a means of fulfilling its duties under the FCRA.

60.     Furthermore, at all times relevant hereto, Hyundai incorporated, warranted, and or represented to the credit reporting agencies to which it reported that it had adopted and implemented the Metro 2 format for its reporting of consumer data, and would otherwise comply with Metro 2 and CDIA guidelines in its reporting of consumer information.

61.     As an integral aspect of its duties under the FCRA, Trans Union is required to have in place adequate and reasonable policies and procedures to assure the maximum possible accuracy of information concerning individuals about whom Trans Union produces reports; the requirement to maintain reasonable procedures extends to Trans Union's handling and reinvestigation of disputed information.

62.     At all times relevant hereto, Trans Union adopted and implemented the Metro 2 format as a means of fulfilling its duties under the FCRA.

63.     At all times relevant hereto, Trans Union has required all entities to whom it grants consumer information reporting rights and access to adhere to the Metro 2 reporting guidelines as a condition of such ability and access.

64.     As an integral aspect of its duties under the FCRA, Experian is required to have in place adequate and reasonable policies and procedures to assure the maximum possible accuracy of information concerning individuals about whom Experian produces reports; the requirement to maintain reasonable procedures extends to Experian's handling and reinvestigation of disputed information.

65.     At all times relevant hereto, Experian adopted and implemented the Metro 2 format as a means of fulfilling its duties under the FCRA.

66.     At all times relevant hereto, Experian has required all entities to whom it grants consumer information reporting rights and access to adhere to the Metro 2 reporting guidelines as a condition of such ability and access.

67.     As an integral aspect of its duties under the FCRA, Equifax is required to have in place adequate and reasonable policies and procedures to assure the maximum possible accuracy of information concerning individuals about whom Equifax produces reports; the requirement to maintain reasonable procedures extends to Equifax's handling and reinvestigation of disputed information.

68.     At all times relevant hereto, Equifax adopted and implemented the Metro 2 format as a means of fulfilling its duties under the FCRA.

69.     At all times relevant hereto, Equifax has required all entities to whom it grants consumer information reporting rights and access to adhere to the Metro 2 reporting guidelines as a condition of such ability and access.

## FACTUAL ALLEGATIONS

70.     In 2017, Plaintiffs signed a three-year lease agreement with Lehman Hyundai car dealership in Miami, Florida to lease a 2017 Genesis G80 vehicle ("2017 Lease").

71.     The lease maturity date for the 2017 Lease was April 1, 2020.

72.     In or around December 2019, Plaintiffs were contacted by Lehman Hyundai with an offer to trade in their 2017 Genesis G80 for a new 2020 Genesis G80 vehicle.

73.     To incentivize Plaintiffs to sign for a new lease agreement for the 2020 Genesis G80 vehicle, Lehman Hyundai informed Plaintiffs that they would not be responsible for making the remaining payments on the 2017 Lease.

74.     On January 3, 2020, Plaintiffs traded in their 2017 Genesis for the 2020 Genesis at the dealership.

75.     Because Plaintiffs were told by Lehman Hyundai that they were no longer responsible for payments on the 2017 Lease, Plaintiffs' last monthly payment on the 2017 Lease was on January 1, 2020.

76.     Shortly thereafter, Plaintiffs began receiving notices via email that they were delinquent on their payments on the 2017 Lease.

77.     Plaintiffs contacted Defendant Hyundai regarding the delinquent notices and were told by Hyundai that they were not responsible for any outstanding payments on the 2017 Lease. Plaintiffs also informed Defendant Hyundai of their communications with Lehman Hyundai regarding the 2017 Lease.

78.     Notwithstanding the above, Hyundai began reporting late payments on the account for the 2017 Lease to Trans Union, Equifax and Experian and subsequently charged off the account.

14

79.     Plaintiffs contacted Defendant Hyundai regarding the negative information on their credit reports and agreed to pay any outstanding balance.

80.     On or about July 8, 2022, Plaintiffs made a payment in the amount of $1,124 to Defendant Hyundai.

81.     Furthermore, Plaintiffs asked Defendant Hyundai to remove the negative reporting from their credit reports related to the 2017 Lease account, and Defendant Hyundai agreed to cease reporting the late payment history.

82.     Defendant Hyundai, however, continued to report the negative payment history on the account to the credit reporting agencies.

83.     In or around July or August 2022, Plaintiffs began disputing the Hyundai account with the Trans Union, Equifax and Experian.

84.     Plaintiff Annie Leonard submitted at least three disputes to Equifax disputing the accuracy of the payment history associated with the Hyundai account between July 2022 and August 2023.

85.     Equifax and Hyundai failed to correct the late payment history that Plaintiff Annie Leonard was disputing.

86.     Plaintiff Annie Leonard submitted at least three disputes to Trans Union disputing the accuracy of the payment history associated with the Hyundai account between July 2022 and August 2023.

87.     Trans Union and Hyundai failed to correct the late payment history that Plaintiff Annie Leonard was disputing.

88.     The Hyundai account was not reported on Plaintiff Annie Leonard's Experian credit report.

89.     Plaintiff Barry Leonard submitted at least one dispute to each Trans Union, Equifax and Experian disputing the accuracy of the payment history associated with the Hyundai account.

90.     Trans Union and Hyundai failed to correct the late payment history that Plaintiff Barry Leonard was disputing.

91.     Equifax and Experian failed to investigate Plaintiff Barry Leonard's disputes.

92.     Defendants' derogatory and inaccurate reporting of the 2017 Lease account on Plaintiffs' credit reports negatively reflects upon Plaintiffs' financial obligations, credit score and credit worthiness to existing and potential creditors.

93.     Courts have regularly held that allegations of lower credit scores, taken as true, are sufficient to allege a concrete injury-in-fact for the purposes of standing under Article III. *See Pedro v. Equifax, Inc.*, 868 F.3d 1275 (11th Cir. 2017) ("[H]er credit score dropped 100 points as a result of the challenged conduct. Because Pedro alleged that she suffered an injury in fact, she has standing to pursue her complaint."); *See Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583 (7th Cir. 2016) (standing where Plaintiffs alleged that they "have suffered damage to their credit and been forced to pay Ocwen greater payments and a higher interest rate"); *See Santangelo v. Comcast Corp.*, 162 F. Supp. 3d 691 (N.D. Ill. 2016) ("a depleted credit score is sufficient to constitute an injury-in-fact for the purposes of establishing Article III standing"); *See Binns v. Ocwen Loan Servicing, LLC*, No. 14- 01764, 2015 U.S. Dist. LEXIS 132743, 2015 WL 5785693, at *9 (S.D. Ind. Sept. 30, 2015) ("injuries to plaintiffs' credit scores and reputations were considered intangible harms"); *See Rothman v. U.S. Bank Nat'l Ass'n*, No. 13-03381, 2014 U.S. Dist. LEXIS 141100, 2014 WL 4966907, at *5 (N.D. Cal. Oct. 3, 2014) ("Injury to a credit score is sufficient to constitute 'actual damages'"); *See Green v. RentGrow, Inc.*, No. 2:16cv421, 2016

U.S. Dist. LEXIS 166229 ("A decrease in credit score may still establish an injury in fact sufficient to confer standing"); *See Adams v. Fifth Third Bank*, No. 3:16-CV-00218-TBR, 2017 U.S. Dist. LEXIS 18932 (W.D. Ky. Feb. 9, 2017) ("Plaintiffs' allegations of lower credit scores … are sufficient to allege a concrete injury-in-fact for the purposes of standing under Article III."); and, *See Coulbertson v. Experian Info. Sols., Inc.*, No. 16-cv-05672-RS, 2017 U.S. Dist. LEXIS 69484 (N.D. Cal. Mar. 24, 2017) ("At a minimum, Coulbertson has alleged a sufficient injury-in-fact through her claim that her credit score suffered as a result of the credit report she disputes").

## COUNT I – VIOLATIONS OF 15 U.S.C. §1681s-2(b)
## AGAINST HYUNDAI

94.     Plaintiffs incorporate by reference paragraphs 1, 2-3, 6-8, 12-17, 20-53, 55-60, 70-90, and 92-93 as if fully stated herein.

95.     Hyundai is a furnisher under the FCRA because it provides consumer credit information concerning consumers to credit reporting agencies.

96.     Hyundai violated 15 U.S.C. §1681s-2(b) by failing to fully and properly investigate Plaintiffs' disputes when it failed to review all relevant information provided by the credit reporting agencies.

97.     As a result of Hyundai's violations of the FCRA, Plaintiffs have been damaged.

98.     Plaintiffs' damages include damages for mental and emotional distress associated with the Hyundai account remaining on their credit reports following their disputes, loss of credit and the opportunity to benefit from credit, time spent dealing with credit report disputes, and the costs associated with disputes.

99.     Hyundai negligently violated FCRA entitling Plaintiffs to recover under 15 U.S.C. §1681o.

100.    Additionally, Hyundai committed a willful violation of the FCRA entitling Plaintiffs to recover under 15 U.S.C. §1681n(a).

101.    Plaintiffs are entitled to an award of prevailing party attorney's fees pursuant to 15 U.S.C. §1681.

WHEREFORE, Plaintiffs pray this Honorable Court to enter the following relief against Hyundai in the form of: Actual damages in an amount to be determined by the jury; Punitive damages in an amount to be determined by the jury; Statutory damages as determined by the Court; Attorneys' fees, litigation expenses and costs; Interest as permitted by law; and such other and further relief including as the Court deems equitable and just under the circumstances.

### COUNT II - VIOLATIONS OF 15 U.S.C. §1681i
### AGAINST TRANS UNION

102.    Plaintiffs incorporate by reference paragraphs 1-3, 9, 12-57, 61-63, 70-83, 86-87, 89-90 and 92-93 as if fully stated herein.

103.    At all times relevant hereto, Trans Union is and was a "consumer reporting agency" as provided for under the FCRA.

104.    At all times relevant hereto, Plaintiffs were each a "consumer" as provided for under the FCRA.

105.    During the relevant time frame, Trans Union received Plaintiffs' disputes regarding the accuracy or completeness of the Hyundai account appearing on Plaintiffs' credit reports.

106.    Trans Union violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiffs' credit file after receiving actual notice of inaccuracies contained therein.

107.     Additionally, Trans Union unreasonably relied on information provided by Hyundai, when readily verifiable information was provided by Plaintiffs in the disputes placing Trans Union on notice that Hyundai's credit information was inaccurate and unreliable.

108.     Trans Union's acts or omissions were willful, rendering it liable to Plaintiffs for punitive damages pursuant to 15 U.S.C. §1681n.

109.     Alternatively, Trans Union negligently violated FCRA entitling Plaintiffs to recover under 15 U.S.C. §1681o.

110.     As a result of Trans Union's FCRA violations, Plaintiffs have suffered damages including but not limited to, damages for mental and emotional distress associated with the Hyundai account remaining on their credit reports following their dispute, loss of credit and the opportunity to benefit from credit, time spent dealing with credit report disputes, and the costs associated with disputes.

WHEREFORE, Plaintiffs pray this Honorable Court to enter the following relief against Trans Union in the form of: Actual damages in an amount to be determined by the jury; Punitive damages in an amount to be determined by the jury; Statutory damages as determined by the Court; Attorneys' fees, litigation expenses and costs; Interest as permitted by law; and such other and further relief including as the Court deems equitable and just under the circumstances.

### COUNT III - VIOLATIONS OF 15 U.S.C. §1681e(b)
### AGAINST TRANS UNION

111.     Plaintiffs incorporate by reference paragraphs 1-3, 9, 12-57, 61-63, 70-83, 86-87, 89-90 and 92-93 as if fully stated herein.

112.     At all times relevant hereto, Trans Union is and was a "consumer reporting agency" as provided for under the FCRA.

113.     At all times relevant hereto, Plaintiffs were each a "consumer" as provided for under the FCRA.

114.     Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiffs.

115.     Any users of credit reports that viewed the Hyundai account saw the inaccurate and derogatory information associated with the account.

116.     Despite Plaintiffs' disputes, Trans Union has continued reporting the Hyundai account inaccurately and does so presently.

117.     Trans Union's acts and/or omissions were willful, rendering it liable to Plaintiffs for punitive damages pursuant to 15 U.S.C. §1681n.

118.     In the alternative, Trans Union negligently violated FCRA entitling Plaintiffs to recover under 15 U.S.C. §1681o.

119.     As a result of Trans Union's failures to comply with the FCRA, Plaintiffs have suffered damages including but not limited to, damages for mental and emotional distress associated with the Hyundai account remaining on their credit report following their disputes, loss of credit and the opportunity to benefit from credit, time spent dealing with credit report disputes, and the costs associated with disputes.

WHEREFORE, Plaintiffs pray this Honorable Court to enter the following relief against Trans Union in the form of: Actual damages in an amount to be determined by the jury; Punitive damages in an amount to be determined by the jury; Statutory damages as determined by the Court; Attorneys' fees, litigation expenses and costs; Interest as permitted by law; and such other and further relief including as the Court deems equitable and just under the circumstances.

### COUNT IV – VIOLATIONS OF 15 U.S.C. §1681i
### AGAINST EXPERIAN AS TO PLAINTIFF BARRY LEONARD ONLY

120.     Plaintiff incorporates by reference paragraphs 1-3, 10, 12-57, 64-66, 70-83, 88-89 and 91-93 as if fully stated herein.

121.     At all times relevant hereto, Experian is and was a "consumer reporting agency" as provided for under the FCRA.

122.     At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

123.     During the relevant time frame, Experian received Plaintiff's disputes regarding the accuracy or completeness of the Hyundai account appearing on Plaintiff's credit report.

124.     Experian violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein.

125.     Additionally, Experian unreasonably relied on information provided by Hyundai, when readily verifiable information was provided by Plaintiff in the disputes placing Experian on notice that Hyundai's credit information was inaccurate and unreliable.

126.     Experian's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

127.     In the alternative, Experian negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

128.     As a result of Experian's violations of the FCRA, Plaintiff has suffered damages including but not limited to, damages for mental and emotional distress associated with the Hyundai account remaining on his credit report(s) following his dispute, loss of credit and the

opportunity to benefit from credit, time spent dealing with credit report disputes, and the costs associated with disputes.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Experian in the form of: Actual damages in an amount to be determined by the jury; Punitive damages in an amount to be determined by the jury; Statutory damages as determined by the Court; Attorneys' fees, litigation expenses and costs; Interest as permitted by law; and such other and further relief including as the Court deems equitable and just under the circumstances

## COUNT V – VIOLATIONS OF 15 U.S.C. §1681e(b)
## AGAINST EXPERIAN AS TO PLAINTIFF BARRY LEONARD ONLY

129.    Plaintiff incorporates by reference paragraphs 1-3, 10, 12-57, 64-66, 70-83, 88-89 and 91-93 as if fully stated herein.

130.    At all times relevant hereto, Experian is and was a "consumer reporting agency" as provided for under the FCRA.

131.    At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

132.    Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

133.    Any users of credit reports that viewed the Hyundai account saw the inaccurate and derogatory information associated with the account.

134.    Despite Plaintiff's disputes, Experian has continued reporting the Hyundai account inaccurately and does so presently.

135.    Experian's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages pursuant to 15 U.S.C. §1681n.

136.     In the alternative, Experian negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

137.     As a result of Experian's failures to comply with the FCRA, Plaintiff has suffered damages including but not limited to, damages for mental and emotional distress associated with the Hyundai account remaining on his credit report(s) following his dispute, loss of credit and the opportunity to benefit from credit, time spent dealing with credit report disputes, and the costs associated with disputes.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Experian in the form of: Actual damages in an amount to be determined by the jury; Punitive damages in an amount to be determined by the jury; Statutory damages as determined by the Court; Attorneys' fees, litigation expenses and costs; Interest as permitted by law; and Such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT VI – VIOLATIONS OF 15 U.S.C. §1681i
## AGAINST EQUIFAX

138.     Plaintiffs incorporate by reference paragraphs 1-3, 11, 12-57, 67-85, 89 and 91-93 as if fully stated herein.

139.     At all times relevant hereto, Equifax is and was a "consumer reporting agency" as provided for under the FCRA.

140.     At all times relevant hereto, Plaintiffs were each a "consumer" as provided for under the FCRA.

141.     During the relevant time frame, Equifax received Plaintiffs' disputes regarding the accuracy of Hyundai account on Plaintiffs' credit reports.

142.     Equifax violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiffs' credit files after receiving actual notice of inaccuracies contained therein.

143.     Additionally, Equifax unreasonably relied on information provided by Hyundai, when readily verifiable information was provided by Plaintiffs in the disputes placing Equifax on notice that Hyundai's credit information was inaccurate and unreliable.

144.     Even after Plaintiffs' disputes, the Hyundai account is still being reported on Plaintiffs' credit reports.

145.     Equifax's acts and/or omissions were willful, rendering it liable to Plaintiffs for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

146.     In the alternative, Equifax negligently violated the FCRA entitling Plaintiffs to recover under 15 U.S.C. §1681o.

147.     As a result of Equifax's violations of the FCRA, Plaintiffs have suffered damages including but not limited to, damages for mental and emotional distress associated with the Hyundai account remaining on their credit report(s) following their disputes, loss of credit and the opportunity to benefit from credit, time spent dealing with credit report disputes, and the costs associated with disputes.

WHEREFORE, Plaintiffs pray this Honorable Court to enter the following relief against Equifax in the form of: Actual damages in an amount to be determined by the jury; Punitive damages in an amount to be determined by the jury; Statutory damages as determined by the Court; Attorneys' fees, litigation expenses and costs; Interest as permitted by law; and such other and further relief including as the Court deems equitable and just under the circumstances

## COUNT VII– VIOLATIONS OF 15 U.S.C. §1681e(b)
## AGAINST EQUIFAX

148.     Plaintiffs incorporate by reference paragraphs 1-3, 11, 12-57, 67-85, 89 and 91-93 as if fully stated herein.

149.     At all times relevant hereto, Equifax is and was a "consumer reporting agency" as provided for under the FCRA.

150.     At all times relevant hereto, Plaintiffs were each a "consumer" as provided for under the FCRA.

151.     Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

152.     Any users of credit reports that viewed the Hyundai account saw the inaccurate and derogatory information associated with the account.

153.     Despite Plaintiffs' disputes, Equifax has continued reporting the Hyundai account inaccurately and does so presently.

154.     Equifax's acts and/or omissions were willful, rendering it liable to Plaintiffs for punitive damages pursuant to 15 U.S.C. §1681n.

155.     In the alternative, Equifax negligently violated the FCRA entitling Plaintiffs to recover under 15 U.S.C. §1681o.

156.     As a result of Equifax's failures to comply with the FCRA, Plaintiffs have suffered damages including but not limited to, damages for mental and emotional distress associated with the Hyundai account remaining on their credit report(s) following their disputes, loss of credit and the opportunity to benefit from credit, time spent dealing with credit report disputes, and the costs associated with disputes.

WHEREFORE, Plaintiffs pray this Honorable Court to enter the following relief against Equifax in the form of: Actual damages in an amount to be determined by the jury; Punitive damages in an amount to be determined by the jury; Statutory damages as determined by the Court; Attorneys' fees, litigation expenses and costs; Interest as permitted by law; and Such other and further relief including as the Court deems equitable and just under the circumstances.

**JURY DEMAND**

157.    Plaintiffs demand a trial by jury on all issues so triable.


Dated: July 2, 2024                          *Respectfully submitted*,

                                             **SHARMIN & SHARMIN, P.A.**

                                             */s/ Eiman Sharmin*
                                             Eiman Sharmin, Esq.
                                             eiman@sharminlaw.com
                                             FBN: 716391
                                             830 North Federal Highway
                                             Lake Worth, FL 33460
                                             Main: 561-655-3925
                                             Fax: (844) 921-1022
                                             *Attorneys for Plaintiff*